## WESTINGHOUSE ELECTRIC MFG. CO. v. BINGHAMTON RY. CO.

### Petition of PHELPS.

(District Court, N. D. New York.   October 27, 1920.)

1. **Receivers ⬉95—Consent to contract which will save expense subject to Public Service Commission's approval.**
   The court will authorize its receiver to enter into a contract with another corporation for the construction of a power and transmission line, which will enable the receiver to secure power for the operation of the property at a great saving, though the contract requires the issuance of securities, which cannot be done until the approval of the state Public Service Commission is secured, since it is not probable that such approval will be withheld after the court authorizes its receiver to act.

2. **Railroads ⬉62—Electric railway company can build power transmission line.**
   Under Railroad Law N. Y., §§ 8, 17, authorizing a railroad corporation to hold property to aid it in the construction, maintenance, and accommodation of its railroad, and to condemn from time to time property for

additions, betterments, and facilities necessary or convenient for its maintenance, an electric railway company has authority to acquire real estate and contract for the construction of a power transmission line from the state line to its line of railway.

In Equity. Suit by the Westinghouse Electric Manufacturing Company against the Binghamton Railway Company. Petition of William G. Phelps, as receiver of the Binghamton Railway Company, for authority to execute a contract for the construction of power transmission line. Authority granted.

The receiver of the Binghamton Railway Company, William G. Phelps, petitions for an order of this court authorizing him as such receiver to execute a proposed contract between the Scranton, Montrose & Binghamton Railroad Company and the said Binghamton Railway Company, the main object and purpose of which is to bring about the construction of a power transmission line from the said state line to the village of Endicott, Broome county, state of New York, into and through which village the Binghamton Railway Company's line of railway now extends, and the purpose of which is to cheapen the cost of power in operating the Binghamton Railway Company's system.

Keenan, Brink & Harrison, of Binghamton, N. Y., for receiver.

Locke, Babcock, Spratt & Hollister, of Buffalo, N. Y., for bondholders' committee and Fidelity Trust Co. of Buffalo.

Harry C. Reynolds, of Scranton, Pa., for Scranton, M. & B. R. Co.

RAY, District Judge. The Binghamton Railway Company is a corporation organized under the laws of the state of New York, and is engaged in operating a street railway line, the total trackage of which is about 50 miles and extends from the city of Binghamton easterly to Port Dickinson and westerly to the village of Union. It now generates its own power, and to enable it to do so uses coal procured from the coal fields of Pennsylvania, mainly from the anthracite region in the immediate vicinity of the city of Scranton, Pa., but uses some bituminous coal, which is obtained from the western part of the state of Pennsylvania.

The Scranton, Montrose & Binghamton Railroad Company is a corporation organized and existing under the laws of the state of Pennsylvania, and has its principal offices at the city of Scranton, in the state of Pennsylvania, which city is about 60 miles from the city of Binghamton. The said Scranton, Montrose & Binghamton Railroad Company is a street surface railroad company, and owns more than 90 per cent. of the capital stock of the said Binghamton Railway Company. The said Scranton, Montrose & Binghamton Railroad Company has already constructed and has in operation a power transmission line extending from the city of Scranton aforesaid to Brookside, in the state of Pennsylvania, where its generating power plant is located. The said Pennsylvania corporation has already constructed its power transmission line from Brookside, Pa., to the state line, at a point about 7 miles distant from the village of Endicott, and has acquired certain rights of way for the building of its transmission line from the state line, through the towns of Vestal and Union, in the county of Broome,

state of New York, to Endicott. The proposed agreement, a copy of which is filed with this memorandum of opinion, sets out these matters fully and quite clearly.

By reason of its accessibility to the coal mines in the state of.Pennsylvania, the Pennsylvania company is able to generate power for the operation of street railway lines at much less cost than that of the Binghamton Railway Company, and it was stated on the argument, and is set forth in the papers, and has not been questioned or denied, that if the proposed agreement is executed and carried out the result will be a saving to the Binghamton Railway Company of at least $50,000 per year in the cost of power necessary for the operation of its line of railway.

Since the appointment of the receiver in the action above entitled, who is now operating the Binghamton Railway Company and its system, it has applied for and finally secured authority to increase its rate of fare from 5 to 6 cents, and the Pennsylvania Company has advanced money to pay interest on the bonded indebtedness of the Binghamton Railway Company to the extent of approximately $90,000. This last fact is not set forth in the papers, but the statement was made upon the oral argument, and is not denied, and has appeared to the court in other proceedings. The Binghamton Railway Company is now paying its operating expenses and necessary current repairs from its income. The saving in the cost of power above mentioned will be beneficial to the Binghamton Railway Company, as well as to its stockholders and holders of bonds issued by said company and secured by a mortgage on its property, given to the Fidelity Trust Company of Buffalo, N. Y., as trustee named in said mortgage, under which the bonds referred to were issued. The total bonded indebtedness of the Binghamton Railway Company approximates $2,374,000. Its outstanding indebtedness, not secured by mortgage or other liens, approximates $400,000.

Mr. Babcock states that he has no objection to authority being given the receiver to apply to the Public Service Commission for authority to enter into the contract, but urges that the court should refrain from passing directly upon the merits of the question at this time. He urges that he does not see how the New York company can procure authority from the Public Service Commission to make the contract at this time; the New York corporation being in the hands of the court and a receiver. He urges that, being in the hands of a receiver and of the court, the New York corporation cannot now take a single step in the way of raising money till it is reinvested with its property, and he also insists that in his judgment the Public Service Commission ought not to and will not grant it any authority to bind itself to raise money till after the receivership is ended or the receiver discharged.

[1] If, as is alleged and not denied, the execution of the agreement proposed and its execution will result in a saving of $50,000 annually in operating the Binghamton Railway Company, it seems to me that the application ought to be granted, and that the granting of such application cannot result in any injury whatever to the bondholders referred to, represented by the bondholders' committee and by Mr. Babcock. The extension of the power transmission line from the state

line to the village of Endicott, about 7 miles, under the proposed agreement, is to be paid for in the first instance by the Pennsylvania company, and no money will be taken from the hands of the receiver or from the treasury of the New York corporation for that purpose. The proposition is that the New York corporation shall issue certain obligations, payable in the future, to reimburse the Pennsylvania corporation the cost of this outlay. The Pennsylvania Company is to furnish power over this transmission line at a reduced cost, which will fully compensate the New York corporation, if the agreement is executed and carried out, and the result is that the New York corporation is in no wise injured, but benefited, and the Pennsylvania corporation gets no benefit, except compensation for its outlay, and which is to come in the future. If there be any profits on the power furnished, then, of course, it would be benefited to the extent of that profit; but there is nothing before the court to show that the Pennsylvania company would derive any such profit, and there is nothing in the papers or before the court to indicate that the proposed agreement is not in all respects just, equitable, and fair.

It is the duty of this court to conserve the property of the Binghamton Railway Company now in the hands of its receiver, and to authorize such action as will be a benefit to the company and its bondholders and the general creditors of such Binghamton Railway Company. There has not been a suggestion that the bondholders will be in any way injured or their rights prejudiced by the execution of the proposed agreement. It has not been suggested that the rights of the trustee under the mortgage referred to, the Fidelity Trust Company of Buffalo, will be in any wise prejudiced by the execution of the proposed agreement. The receiver cannot proceed further than to execute the agreement without the approval of the Public Service Commission, and it seems to me that it would be folly to send this receiver to that commission for authority to execute the agreement without the approval of the court, when the court is of the opinion that the authority ought to be granted, and that the interest of the Binghamton Railway Company, its creditors, and bondholders, demand that the agreement should be executed and the necessary authority granted, not only by this court, but by the Public Service Commission.

[2] It is urged by Mr. Babcock that the execution of the proposed agreement by the Binghamton Railway Company would be ultra vires, in so far as it contemplates the participation of that company in the construction of and payment for a power transmission line from the state line between the two states to the village of Endicott, inasmuch as this transmission line in the state of New York would cut across country from the village of Endicott to the state line, there to take power generated by the Pennsylvania company. If it be true, and I do not think it is, that the Binghamton Railway Company has not power under its charter to construct a transmission line to the state line, there to take power necessary for the operation of its road, I think legislative authority on application would be granted by way of amendment to its charter, which would enable it to take all necessary action to make the agreement effectual. If the state line were one-fourth of a mile dis-

tant from the present line of the Binghamton Railway Company, and the Pennsylvania company's transmission line extended to such state line, can it be the law is such that this New York corporation, under a suitable agreement protecting the rights of both parties, could not build a transmission line from Endicott, or Binghamton, or any other point on its line, to connect with the Pennsylvania company's transmission line and take power necessary for the operation of the cars of the New York corporation?

To my mind it is immaterial that the distance is 7 miles, instead of 7 rods. In my judgment, under its present charter powers, the New York corporation has the right and power to take such measures and do such things as are necessary for the operation of its line of road as a street railway. The obtaining power is one of those things necessary to its very life and existence. Primarily it is a street railway line, but power is as necessary to the operation of such a road as is the purchase and ownership of a car in which to carry passengers.

Sections 8 and 17 of the Railroad Law of the state of New York (Consol. Laws, c. 49) provide as follows:

Section 8: "Subject to the limitations and requirements of this chapter and of the Public Service Commission Law every railroad corporation, in addition to the powers given by the general and stock corporation laws, shall have power: * * * 2. *Acquisition of Real Property.* To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroad; and to acquire by condemnation such real estate and property as may be necessary for such construction, maintenance and accommodation in the manner provided by law, but the real property acquired by condemnation shall be held and used only for the purposes of the corporation during the continuance of the corporate existence."

Section 17: "All real property required by any railroad corporation for the purpose of its incorporation or for any purpose stated in this chapter shall be deemed to be required for a public use, and may be acquired by such corporation. If the corporation is unable to agree for the purchase of any such real property, or of any right, interest or easement thereon, required for any such purpose, or if the owner thereof shall be incapable of selling the same, or if after diligent search and inquiry the name and residence of any such owner cannot be ascertained, it shall have the right to acquire title thereto by condemnation. Every railroad corporation shall have the power from time to time to make and use upon or in connection with any railroad either owned or operated by it such additions, betterments and facilities as may be necessary or convenient for the better management, maintenance or operation of any such railroad, and shall have the right by purchase or by condemnation, to acquire any real property required therefor, and it shall also have the right of condemnation. * * * *"